IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| DAVID A. SMITH, | ) |
| | ) |
| Plaintiff, | ) Civil Action No. 17-686 |
| | ) Chief Magistrate Judge Maureen P. Kelly |
| vs. | ) |
| | ) |
| ALLEGHENY VALLEY SCHOOL | ) |
| DISTRICT, | ) Re: ECF No. 2 |
| | ) |
| Defendant. | ) |
| | ) |

## OPINION

**KELLY, Chief United States Magistrate Judge**

Pending before the Court is Defendant Allegheny Valley School District's Motion to Dismiss the Complaint filed against it by Plaintiff David A. Smith pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). ECF No. 2.

## I. PROCEDURAL BACKGROUND

On May 26, 2017, Allegheny Valley School District ("Defendant" or "the District") filed a Notice of Removal from the Court of Common Pleas of Allegheny County related to the Complaint filed against it by David A. Smith ("Plaintiff" or "Mr. Smith") in state court on May 3, 2017. ECF No. 1. In the Complaint, ECF No. 1-5, Mr. Smith alleges a 42 U.S.C. § 1983 First Amendment retaliation claim against the District; "Plaintiff alleges that his right to be free of retaliation for the exercise of his First Amendment rights has been violated by Defendant's actions in banning him from school property and initiating a criminal complaint which led to his arrest. ECF No. 10 at 6.

On June 16, 2017, the District filed its Motion to Dismiss, ECF No. 2, and Brief in Support

of Motion to Dismiss, ECF No. 3. On August 14, 2017, Plaintiff filed his Brief in Response to

Defendant's Motion to Dismiss Pursuant to F.R.C.P. 12(b)(1) and 12(b)(6). ECF No. 10. This

matter, thus, is fully briefed and ripe for disposition. As more fully explained below, for the

following reasons, the Court concludes that the District's Motion to Dismiss will be granted in part

as to Mr. Smith's request for punitive damages and denied in all other respects.

## II. STANDARDS OF REVIEW

In Kehr Packages, Inc. v. Fidelcor, Inc., 926 F.2d 1406 (3d Cir. 1991), the United States

Court of Appeals for the Third Circuit explained:

> A district court can grant a Rule 12(b)(1) motion to dismiss for lack of subject
> matter jurisdiction based on the legal insufficiency of a claim. But dismissal is
> proper only when the claim "clearly appears to be immaterial and made solely for
> the purpose of obtaining jurisdiction or ... is wholly insubstantial and frivolous."
> Bell v. Hood, 327 U.S. 678, 682, 66 S.Ct. 773, 776, 90 L.Ed. 939 (1946). See also
> Oneida Indian Nation v. County of Oneida, 414 U.S. 661, 666, 94 S.Ct. 772, 776,
> 39 L.Ed.2d 73 (1974) (claim must be "so insubstantial, implausible, foreclosed by
> prior decisions of this Court, or otherwise completely devoid of merit as not to
> involve a federal controversy"). Ordinarily, a court must assume jurisdiction over
> a case before deciding legal issues on the merits. Bell, 327 U.S. at 682, 66 S.Ct. at
> 776. A Rule 12(b)(6) dismissal for failure to state a claim is not subject to the same
> limitations. The claim need not be wholly insubstantial to be dismissed. As this
> court has noted, "[t]he threshold to withstand a motion to dismiss under [Rule]
> 12(b)(1) is thus lower than that required to withstand a Rule 12(b)(6) motion."
> Lunderstadt v. Colafella, 885 F.2d 66, 70 (3d Cir. 1989).

Kehr Packages, Inc., 926 F.2d at 1408-09. Motions brought under Rule 12(b)(1) may present

either a facial or factual challenge to the court's subject matter jurisdiction. As explained by the

appellate court in Constitution Party of Pennsylvania v. Aichele, 757 F.3d 347 (3d Cir. 2014):

> A facial attack, as the adjective indicates, is an argument that considers a claim on
> its face and asserts that it is insufficient to invoke the subject matter jurisdiction of
> the court because, for example, it does not present a question of federal law, or
> because there is no indication of a diversity of citizenship among the parties, or
> because some other jurisdictional defect is present. Such an attack can occur before
> the moving party has filed an answer or otherwise contested the factual allegations

of the complaint. See *Mortensen*, 549 F.2d at 889-92 (noting the distinction between a facial attack and a "factual evaluation," which "may occur at any stage of the proceedings, from the time the answer has been served until after the trial has been completed." (emphasis added) (footnote omitted)). A factual attack, on the other hand, is an argument that there is no subject matter jurisdiction because the facts of the case—and here the District Court may look beyond the pleadings to ascertain the facts—do not support the asserted jurisdiction. So, for example, while diversity of citizenship might have been adequately pleaded by the plaintiff, the defendant can submit proof that, in fact, diversity is lacking. See *id.* at 891 ("[T]he trial court is free to weigh the evidence ... and the existence of disputed material facts will not preclude the trial court from evaluating for itself the merits of jurisdictional claims."). In sum, a facial attack "contests the sufficiency of the pleadings," *In re Schering Plough Corp.*, 678 F.3d at 243, "whereas a factual attack concerns the actual failure of a [plaintiff's] claims to comport [factually] with the jurisdictional prerequisites." *CNA v. United States*, 535 F.3d 132, 139 (3d Cir. 2008) (internal quotation marks omitted) (alterations in original).

Constitution Party of Pennsylvania, 757 F.3d at 358.

In assessing the sufficiency of a complaint pursuant to a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the Court must accept as true all material allegations in the complaint and all reasonable factual inferences must be viewed in the light most favorable to the plaintiff. Odd v. Malone, 538 F.3d 202, 205 (3d Cir. 2008). The Court, however, need not accept bald assertions or inferences drawn by the plaintiff if they are unsupported by the facts set forth in the complaint. See Cal. Pub. Empls.' Ret. Sys. v. The Chubb Corp., 394 F.3d 126, 143 (3d Cir. 2004) (citing Morse v. Lower Merion Sch. Dist., 132 F.3d 902, 906 (3d Cir. 1997)). Nor must the Court accept legal conclusions set forth as factual allegations. Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007). Rather, "[f]actual allegations must be enough to raise a right to relief above the speculative level." Id. (citing Papasan v. Allain, 478 U.S. 265, 286 (1986)). Indeed, the United States Supreme Court has held that a complaint is properly dismissed under Fed.R.Civ.P. 12(b)(6) where it does not allege "enough facts to state a claim to relief that is plausible on its face," id. at 570, or where the factual content does not allow the court "to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662,

678 (2009). See Phillips v. Cty. of Allegheny, 515 F.3d 224, 231 (3d Cir. 2008) (finding that, under Twombly, "labels, conclusions, and a formulaic recitation of the elements of a cause of action" do not suffice but, rather, the complaint "must allege facts suggestive of [the proscribed] conduct" and that are sufficient "to raise a reasonable expectation that discovery will reveal evidence of the necessary element[s] of his claim").

## III. FACTUAL ALLEGATIONS

In the Complaint, Mr. Smith makes the following factual allegations, which this Court must accept as true for purposes of deciding the District's Motion to Dismiss.

Mr. Smith is the parent of D.S.; D.S. used to be a student at Springdale Junior-Senior High School in the District. ECF No. 1-5 ¶¶ 1, 3. On May 1, 2014, when D.S. was a sophomore, D.S. was assaulted by his teammates on the high school baseball team. Id. ¶ 4. Two boys threw D.S. down, grabbed his cell phone, and texted rude and explicit messages to D.S.'s mother. Id. This was part of a pattern of bullying and harassment that D.S. had endured while participating on the baseball team since his freshman year of high school. Id. ¶ 5. On May 3, 2014, Mr. Smith met with the baseball coach to report the incident. Id. ¶ 6. The coach indicated to Mr. Smith that the bullying problem would be taken care of following the conclusion of the baseball season. Id. ¶ 7.

On the bus ride home from the baseball team's section title game in May 2014, the coach showed or participated in the showing of pornographic videos to members of the baseball team. Id. ¶ 8. This incident was part of a sexualized atmosphere perpetuated by the coach who often made sexual comments about women during baseball practice and who allegedly also showed pornography in the locker room. Id. ¶ 9. On May 29, 2014, during the end-of-the-year sports banquet, Mr. Smith again asked the coach to do something about the May 1, 2014, assault on his son. Id. ¶ 10.

4

Also on May 29, 2014, Plaintiffs wife had been diagnosed with cancer. Id. ¶ 11. She died on June 1, 2014. Id. On June 2, 2014, Mr. Smith went to the high school office to report his wife's death and to discuss arrangements for his son to take his finals. Id.

During the summer, the school guidance counselor contacted D.S. to check on him and to tell him about the Caring Place, an organization for individuals grieving the loss of a friend or relative. Id. ¶ 12. During that phone call, D.S. mentioned to the school guidance counselor the pornography incident and the harassment because it still upset him. Id. Nothing was done in response to this report and the incident was not reported to Childline, which is required by Pennsylvania's mandatory reporting law when any professional in contact with a child suspects abuse. Id.

Mr. Smith and D.S. began attending sessions at the Caring Place and informed a therapist at the Caring Place of D.S.'s issues at the school. Id. A Caring Place staff member who was a mandated reporter made a report to Childline regarding the baseball coach exposing the team to pornography. Id. ¶ 13.

In July 2014, the school principal telephoned Mr. Smith to discuss the May 2014 incident. Id. ¶ 14. Mr. Smith was upset because there had been no resolution of the matter. Id. In his frustration with the lack of action on the school's part, Mr. Smith stated that he could see how incidents like those at Franklin Regional High School happen (where an allegedly bullied student assaulted classmates), stating, "when kids get bullied to the degree my son has, now you can understand why this happens." Id.

The District's administrators all knew that Mr. Smith was still grieving the sudden loss of his wife. Id. ¶ 16.

5

Shortly thereafter, in late August 2014, Mr. Smith and D.S. had a meeting with the school principal, head of the athletic department, and the baseball coach to address the bullying and pornography. Id. ¶ 17. Mr. Smith complained about the harassment D.S. had endured while on the team, but in particular, the text message that had been sent to his late wife. Id. Mr. Smith reiterated his comment about how bullied students may react in the same manner as did the alleged perpetrator at Franklin Regional. Id.

On or about September 23, 2014,[1] Mr. Smith called the principal at the high school, still upset about the fact that the boys who perpetrated the assault against his son had not yet apologized to D.S. Id. ¶ 18. Mr. Smith indicated to the principal that he was going to take the issue to the media. Id.

On or about November 15, 2014, Mr. Smith and D.S. met with the baseball coach and the superintendent of the District. Id. ¶ 19. The discussion became heated, particularly because the coach and principal deflected the question of bullying and harassment and instead misrepresented Mr. Smith's concerns as anger about D.S.'s playing time. Id. ¶ 20. At some point thereafter, Mr. Smith asked the principal whether she had children and how she would feel if this (meaning the bullying and lack of action) happened to her child. Id. ¶ 21.

On January 13, 2015,[2] while visiting the school guidance counselor for another reason, D.S., mentioned the assault and the fact that nothing had been done about it. Id. ¶ 22. D.S. also mentioned that the baseball coach had showed some players pornographic videos from a cell phone. Id.

On January 16, 2015, the guidance counselor spoke with Mr. Smith over the phone. Id. ¶ 23. She asked his permission to relay the content of the conversation to the administration. Id.

---

[1] The Complaint uses the date September 23, 2015, but clearly this is a typographical error.
[2] The Complaint uses the date January 13, 3014, but clearly this is a typographical error.

Sometime during the conversation, Mr. Smith asked the counselor how she would feel if her son was exposed to pornography. Id.

On January 16, 2015, the Springdale Junior-Senior High School Principal and the Superintendent of the District contacted the Chief of Police of Springdale Borough and requested that the police department investigate allegations that the baseball coach had been showing sexually explicit pornography to students on the baseball team. Id. ¶ 24. Mr. Smith made several calls to the Chief of Police of Springdale Borough regarding the investigation and D.S.'s experience with the coach and team. Id. ¶ 25. During one such conversation with the Chief of Police, in reference to the administrators at Springdale Junior-Senior High School and the District, Mr. Smith said, "I am going for the jugular." Id. ¶ 26. Knowing it was an issue of general concern, Mr. Smith also said, "I am not taking this standing down. I am going to the news media." Mr. Smith intimated to the Chief of Police that he would be hiring a lawyer to sue the administration and the coach. Id.

On January 20, 2015, the coach addressed the school board and was permitted to resign without any disciplinary consequences, much to Mr. Smith's distress. Id. ¶ 27. Following the coach's resignation, Mr. Smith contacted the Springdale police department and indicated that the outcome "was not good enough." Id. ¶ 28. Mr. Smith also indicated that he wanted the police to hear from D.S., despite the resignation of the coach. Id.

Mr. Smith also contacted the guidance counselor, angry that students were now punishing D.S. for the coach's resignation. Id. ¶ 29. Mr. Smith again mentioned the incident at Franklin Regional and said that Springdale Junior-Senior High School did not appropriately enforce its anti-bullying policies. Id. Mr. Smith requested an assembly for all students to teach them that it is acceptable to stand up for themselves. Id.

Mr. Smith's conversation with the guidance counselor was conveyed to the Superintendent of the District, as was Mr. Smith's statements that he was going to "go for the jugular," contact the media, and hire an attorney. Id. ¶ 30.

On January 23, 2015, the school principal called the Chief of the Springdale Borough Police Department to report Mr. Smith's comment to the guidance counselor about the incident at Franklin Regional. Id. ¶ 31. On January 24, 2015, the Superintendent of the District called the Chief of Police of Springdale Borough about Mr. Smith's statements. Id. ¶ 32.

On January 26, 2015, Springdale Junior-Senior High School issued a certified letter to Mr. Smith, signed by the school principal, that indicated that Mr. Smith was not permitted on school grounds. Id. ¶ 33. Also on January 26, 2015, the Chief of Police told D.S. that he wanted D.S. to come down to the station for an interview. Id. ¶ 34. Mr. Smith accompanied D.S. to the police station later in the evening of January 26, 2015. Id.

Initially, the police questioned D.S. while Mr. Smith was in the room. Id. ¶ 35. At some point during the interview, the police asked D.S. to step out of the room. Id. Once D.S. left the room, the police arrested Mr. Smith and charged him with one count of harassment as it related to the school principal, one count of harassment as it related to the district superintendent, and terroristic threats as it related to the District. Id.

In April 2015, the Complaint against Mr. Smith was amended to drop the charge of terroristic threats against the District and to add charges of terroristic threats against the principal, the superintendent, and the baseball coach. Id. ¶ 35.

## IV. DISCUSSION

In his Complaint against the District, Mr. Smith alleges a single Section 1983 claim; Mr. Smith contends that the District barred him from the grounds of the Springdale Junior-Senior High

8

School and initiated a criminal complaint against him in retaliation for Mr. Smith advocating on behalf of his son and other Springdale Junior-Senior High School students, conduct which violates his rights under the First Amendment to the United States Constitution. Id. ¶¶ 36-50. It is well established that: "[a] § 1983 retaliation claim asserting a violation of the right to free speech requires a showing of: "(1) constitutionally protected conduct, (2) retaliatory action sufficient to deter a person of ordinary firmness from exercising his constitutional rights, and (3) a causal link between the constitutionally protected conduct and the retaliatory action." Thomas v. Indep. Tp., 463 F.3d 285, 296 (3d Cir. 2006). As explained by the Third Circuit: "[t]he issue of government retaliation for unwelcome communication arises in various contexts. . . . [A]s is the case here, citizens may charge that the government hurt them in retaliation for some criticism against the authorities." Eichenlaub v. Tp. of Indiana, 385 F.3d 274, 282 (3d Cir. 2004) (citing Bd. of County Comm'rs v. Umbehr, 518 U.S. 668, 671-72 (1996)). The District has moved to dismiss Mr. Smith's Section 1983 First Amendment retaliation claim pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). ECF No. 2 ¶ 6.

### A. Defendant's Rule 12(b)(1) Motion to Dismiss Plaintiff's Section 1983 First Amendment Retaliation Claim

In support of its Motion to Dismiss Mr. Smith's Section 1983 claim pursuant to Rule 12(b)(1), the District first contends that this Court lacks subject matter jurisdiction over the claim because Mr. Smith's ban from school property does not constitute a substantial federal claim as shown by the following cases: (1) Cole v. Montague Bd. of Educ., 145 F. App'x. 760 (3d Cir. 2005); (2) Lovern v. Edwards, 190 F.3d 648 (4th Cir. 1999); (3) Justice v. Farley, No. 5:11-CV-99-BR, 2012 WL 83945 (E.D. N.C. Jan. 11, 2012); (4) Mayberry v. Independent Sch. Dist. No. 1 of Tulsa County, Okla., No. 08-CV-416-GKF-PJC, 2008 WL 5070703 (N.D. Okla. Nov. 21, 2008); and (5) Cunningham v. Lenape Regional High Dist. Bd. of Educ., 492 F. Supp. 2d 439 (D.

9

N.J. June 25, 2007). ECF No. 3 at 8-10.

In response, Plaintiff distinguishes the cases cited by the District from the case *sub judice*,

contending:

> At issue here, is not the extent to which the ban or arrest impeded Plaintiff's right to free speech, but whether the motivating factor behind the ban was retaliatory and whether it had a chilling effect on Plaintiff's inclination to exercise his First Amendment rights. Given that none of these cases directly foreclose the possibility of subject matter jurisdiction over a First Amendment retaliation claim where the Plaintiff was both banned from school grounds and subject to arrest at the behest of school personnel, Plaintiff has properly established subject matter jurisdiction. Plaintiff does not allege that he should have unfettered access to school grounds, but instead alleges that the ban, in its harshness and temporal proximity to Plaintiff's expression of frustration about school practices violated his right to be free from retaliation which is a constitutional right distinct from his right to free expression.

ECF No. 10 at 8.

In Hagans v. Lavine, 415 U.S. 528 (1974), the United States Supreme Court explained:

> "Constitutional insubstantiality' . . . has been equated with such concepts as 'essentially fictitious,' 'wholly insubstantial,'; 'obviously frivolous,'; and 'obviously without merit'. The limiting words 'wholly' and 'obviously' have cogent legal significance. In the context of the effect of prior decisions upon the substantiality of constitutional claims, those words import that claims are constitutionally insubstantial only if the prior decisions inescapably render the claims frivolous; previous decisions that merely render claims of doubtful or questionable merit do not render them insubstantial for the purposes of 28 U.S.C. § 2281. A claim is insubstantial only if "its unsoundness so clearly results from the previous decisions of this court as to foreclose the subject and leave no room for the inference that the questions sought to be raised can be the subject of controversy."

Hagans, 415 U.S. at 537-38 (citations omitted).

As an initial matter, given that the District has not attached any evidence in support of its

Rule 12(b)(1) motion, and its arguments in support of its Motion to Dismiss are based upon the

allegations contained in Mr. Smith's Complaint, the Court finds that the District's Rule 12(b)(1)

motion is a facial attack on this Court's subject matter jurisdiction and therefore, will analyze the

motion accordingly. See Constitution Party of Pennsylvania, *supra*.

Turning to the cases cited by the District in support of its contention that Mr. Smith's Section 1983 First Amendment retaliation claim is wholly insubstantial, in Cole v. Montague Bd. of Educ., 145 F. App'x. 760 (3d Cir. 2005), a non-precedential opinion, the United States Court of Appeals for the Third Circuit affirmed the district court's grant of the defendant school board's motion for judgment on the pleadings as to the Section 1983 claim by grandparents of a student in the school district that alleged the defendant violated their due process rights when it "illegally" banned the plaintiffs from school property without a hearing. Cole, 145 F. App'x at 762-63. In so holding, the appellate court concluded that the plaintiffs' claim "plainly lacks merit." Id. at 763 (citing Lovern v. Edwards, 190 F.3d 648 (4th Cir. 1999) (holding that non-custodial parent's claim that prohibiting him from entering school property violated due process is so plainly insubstantial and frivolous as to deprive a federal court jurisdiction over the matter)).

In Lovern v. Edwards, the plaintiff, a non-custodial parent, had alleged that the defendant, the superintendent of the school district where his son attended school, had "violated 42 U.S.C. § 1983 and the First and the Fourteenth Amendments of the Constitution, through deprivation of [his] constitutional rights of free speech, 'right of petition,' and 'parental rights'" when he barred the plaintiff from all school property, due to his continuing pattern of verbal abuse and threatening behavior towards school officials. Lovern, 190 F.3d at 653. The district court, after holding an evidentiary hearing on the plaintiff's motion for injunctive relief, had denied the request for injunctive relief and dismissed the complaint. Id. at 653, 656. The Fourth Circuit concluded, based upon the evidence in the record, that the plaintiff's claims against the defendant were "plainly insubstantial and entirely frivolous" such that the district court lacked subject matter jurisdiction over the plaintiff's complaint and therefore, the case was properly dismissed. Id. at 656.

11

In Justice v. Farley, No. 5:11-CV-99-BR, 2012 WL 83945 (E.D. N.C. Jan. 11, 2012), proceeding under Section 1983, the plaintiff had alleged that the defendant, the superintendent of the school district where his son attended school, had violated his rights under the First and Fourteenth Amendments. Justice, 2012 WL 83945, at *2. The defendant filed a Rule 12(b)(1) motion to dismiss the plaintiff's complaint, arguing that it "should be dismissed because the court lacks subject matter jurisdiction to consider insubstantial federal claims." Id. (citing Lovern, 190 F.3d at 654). The court granted the motion with respect to the claims that alleged that the defendant: (1) violated the plaintiff's rights to due process under the Fourteenth Amendment by banning him from the campus where his son attended school, failing to provide him with a hearing or some type of notice prior to the implementation of the ban, and failing to provide him with information on how to obtain further review of defendant's decision to prohibit him from entering school property and (2) violated the plaintiff's right to freedom of speech under the First Amendment by prohibiting the plaintiff from contacting personnel at his son's school. Justice, 2012 WL 83945, at *3-4. The court denied the motion with respect to the plaintiff's claim that the defendant violated the plaintiff's First Amendment right to free speech when the superintendent banned the plaintiff from school property in retaliation for the plaintiff engaging in protected speech. Id. at *4. In denying this part of the defendant's Rule 12(b)(1) motion, the court reasoned that although the plaintiff had clearly alleged that the defendant had retaliated against him for engaging in a protected activity related to the Individuals with Disabilities Education Act and had emphasized his retaliation claim in his response to the defendant's motion to dismiss, the defendant had not made any substantive arguments regarding the First Amendment retaliation claim. Justice, 2012 WL 83945, at *5.

In Mayberry v. Independent Sch. Dist. No. 1 of Tulsa County, Okla., No. 08-CV-416-GKF-PJC, 2008 WL 5070703 (N.D. Okla. Nov. 21, 2008), the court granted the Rule 12(b)(1) motion to dismiss for failure to assert a substantial federal claim that was filed by the defendants, a school district and the principal of the school where the plaintiff's children attended school. Mayberry, 2008 WL 5070703, at *5. The plaintiff's Section 1983 claim alleged that the defendants violated her parental liberty interest and her Fourteenth Amendment rights to due process and equal protection when (1) they banned her from her child's school for five weeks for violating state law (interfering with peaceful conduct of activities) and (2) upon her appeal of the ban, they conducted a hearing in which she was not permitted to participate fully, and upheld and ratified the ban, although reducing the number of days the ban would be in effect. Id. at *1-2. In so holding, the court reasoned:

> Accepting plaintiff's allegation as true, and applying the substantiality doctrine, this court concludes plaintiff has no plausible claim for relief. The record is replete with decisions by courts that parents do not have a constitutional right to be on school premises. Thus, under Hagans, previous decisions foreclose the subject and leave no room for inference that the questions sought to be raised by plaintiff can be the subject of controversy.

Id. at *5 (citing Hagans, 415 U.S. at 538).

In Cunningham v. Lenape Regional High Dist. Bd. of Educ., 492 F. Supp. 2d 439 (D. N.J. June 25, 2007) the parent plaintiff filed a complaint in which he alleged that the defendants, a school board and the district's superintendent, had banished him from district property in retaliation for constitutionally protected comments concerning the wrestling team, in violation of his rights under the First Amendment. Id. at 444. Plaintiff also filed a motion for preliminary injunction and in support thereof, filed a detailed affidavit. Id. at 444-445. The defendants filed a motion to dismiss pursuant to Rule 12(b)(1) and 12(b)(6) and the court held oral argument in the motion, all which resulted in a record "rich with witnesses and written statements of what can only

be described as truly outrageous behavior." Id. at 443, 451. In analyzing whether the court had subject matter jurisdiction over the plaintiff's First Amendment retaliation claim, the court first found "[u]nder a Rule 12(b)(1) facial challenge, Plaintiff's claim survives because the complaint properly states federal subject matter jurisdiction." Id. at 448. The court then concluded, after reviewing all of the evidence in the record, that the plaintiff's claim did not "survive a factual challenge to subject matter jurisdiction." Id. at 448, 451.

In analyzing the instant Motion to Dismiss and Mr. Smith's specific claim, "it is important to note that Courts are hesitant to get involved with decisions made by local schools unless there are truly constitutional violations." O'Connor v. Bassoff, Civ. A. No. 15-2121, 2015 WL 7774287, at *4 (D. Colo. Dec. 3, 2015). That said, contrary to the District's contention, the Court finds that these prior decisions do not inescapably render Mr. Smith's Section 1983 claim constitutionally insubstantial. First, the Cole and Mayberry cases, *supra*, did not involve a Section 1983 claim premised upon a violation of the First Amendment. Second, and most critically, in Lovern, *supra.* which did involve an alleged violation of the plaintiff's rights under the First Amendment, the dismissal of the plaintiff's claim for lack of subject matter jurisdiction was made by the district court, and affirmed by the appellate court, after an evidentiary hearing and based upon the evidence of record. Similarly, while in Cunningham, *supra*, the plaintiff had alleged a Section 1983 First Amendment retaliation claim factually comparable to the one stated by Mr. Smith in this case and the court granted the defendants' Rule 12(b)(1) motion to dismiss for lack of subject matter jurisdiction, the Cunningham court's reasoning was that while the complaint properly stated federal subject matter jurisdiction, and therefore, survived a facial attack on subject matter jurisdiction, it could not survive a factual challenge to subject matter jurisdiction based upon the evidence in the record. Unlike in Lovern and Cunningham, in the case *sub judice*, the Court has

14

not been provided with any evidence from which to make a factual inquiry into subject matter jurisdiction and therefore, can only review the District's motion as a facial challenge to subject matter jurisdiction. Moreover, in Justice, *supra.* the court actually denied the defendant's Rule 12(b)(1) motion with respect to the plaintiff's First Amendment retaliation claim, albeit because the defendant failed to address in its motion to dismiss the plaintiff's clearly alleged retaliation claim. Finally, at least one district court has concluded, where the plaintiff alleged "that the school banned him from campus in retaliation for him voicing his opinion and concerns to the school about the school's lack of safety and the on-going bullying of his daughter," "that Plaintiff's § 1983 claim of free speech retaliation does not appear to be appropriate for summar[y] dismissal." O'Connor, 2015 WL 7774287, at *4.

The District also contends that this Court lacks subject matter jurisdiction over Plaintiff's First Amendment claim because Mr. Smith did not engage in constitutionally protected conduct. ECF No. 3 at 11-12 (citing ECF No. 105 ¶¶ 14, 20, 29-30). "When Plaintiff's statements are viewed in context, and considering the totality of the circumstances as Plaintiff outlines them in his Complaint, Plaintiff's statements could be considered a true threat." Id.

In Virginia v. Black, 538 U.S. 343 (2003), a case involving cross-burning, the United States Supreme Court explained with respect to the First Amendment and "true threats:"

> The First Amendment permits "restrictions upon the content of speech in a few limited areas, which are 'of such slight social value as a step to truth that any benefit that may be derived from them is clearly outweighed by the social interest in order and morality.'" R.A.V. v. City of St. Paul, supra, at 382–383, 112 S.Ct. 2538 (quoting Chaplinsky v. New Hampshire, supra, at 572, 62 S.Ct. 766).
>
> . . .
>
> Thus, for example, . . . the First Amendment . . . permits a State to ban a "true threat." Watts v. United States, 394 U.S. 705, 708, 89 S.Ct. 1399, 22 L.Ed.2d 664 (1969) (per curiam) (internal quotation marks omitted); accord, R.A.V. v. City of St. Paul, supra, at 388, 112 S.Ct. 2538 ("[T]hreats of violence are outside the First

15

Amendment"); Madsen v. Women's Health Center, Inc., 512 U.S. 753, 774, 114 S.Ct. 2516, 129 L.Ed.2d 593 (1994); Schenck v. Pro–Choice Network of Western N. Y., 519 U.S. 357, 373, 117 S.Ct. 855, 137 L.Ed.2d 1 (1997).

> "True threats" encompass those statements where the speaker means to communicate a serious expression of an intent to commit an act of unlawful violence to a particular individual or group of individuals. See Watts v. United States, supra, at 708, 89 S.Ct. 1399 ("political hy[p]erbole" is not a true threat); R.A.V. v. City of St. Paul, 505 U.S., at 388, 112 S.Ct. 2538. The speaker need not actually intend to carry out the threat. Rather, a prohibition on true threats "protect[s] individuals from the fear of violence" and "from the disruption that fear engenders," in addition to protecting people "from the possibility that the threatened violence will occur." Ibid. Intimidation in the constitutionally proscribable sense of the word is a type of true threat, where a speaker directs a threat to a person or group of persons with the intent of placing the victim in fear of bodily harm or death.

Virginia v. Black, 538 U.S. at 358-60. Accepting as true all material factual allegations in Mr. Smith's Complaint and viewing all reasonable factual inferences therein in the light most favorable to him, the Court finds that Mr. Smith has sufficiently alleged facts to support that his speech, in which he harshly criticized school personnel for the District's response to D.S. being bullied and a district employee's inappropriate behavior, did not constitute a "true threat" and therefore, was speech protected by the First Amendment.

For the above-stated reasons, the District's Rule 12(b)(1) Motion to Dismiss the Complaint filed against it by Mr. Smith shall be denied.

### B. Defendant's Rule 12(b)(6) Motion to Dismiss Plaintiff's Section 1983 First Amendment retaliation claim.

The District also contends that Mr. Smith's Section 1983 First Amendment retaliation claim must be dismissed for failure to state a claim upon which relief can be granted. ECF No. 3 at 12. As stated *supra*, the elements of "[a] § 1983 retaliation claim asserting a violation of the right to free speech [are]: "(1) constitutionally protected conduct, (2) retaliatory action sufficient to deter a person of ordinary firmness from exercising his constitutional rights, and (3) a causal

link between the constitutionally protected conduct and the retaliatory action." Thomas, 463 F.3d at 296.

In support of its contention that Mr. Smith has failed to state a Section 1983 First Amendment retaliation claim upon which relief can be granted, the District first argues that Plaintiff's claim "does not rise to a level actionable under the federal constitution as Plaintiff's speech was not curtailed; only his access to school property was limited." ECF No. 3 at 13 (citing Cunningham v. Lenape Regional High Dist. Bd. of Educ., 492 F. Supp. 2d 439, 448 (D.N.J. 2007) (citing Carey v. Brown, 447 U.S. 455, 470-71 (1980); Mayberry, 2008 WL 5070703, at *4)). The District further argues: "with respect to Plaintiff's allegation that his arrest was precipitated by the Superintendent's and principal's calls to the police . . . Plaintiff's constant references to another violent school attack at a school district in a neighboring county are not considered to be protected speech sufficient to constitute constitutionally protected conduct." Id. at 13-14. The District also posits:

> the key question to determine whether a cognizable First Amendment claim has been stated is whether the alleged retaliatory conduct was sufficient to deter a person of ordinary firmness from exercising his First Amendment Rights. Conduct that counts as retaliatory does not have to be great in order to be actionable, but it must be more that de minimis. According to the Plaintiff's Complaint in the case at issue, Plaintiff was allegedly no longer permitted entry on school property, Here, as previously outlined above, Plaintiff has no constitutional right to access to the school, and therefore, any alleged conduct which Plaintiff purports to be retaliatory, is de minimis. There are no allegations that he was at any time prohibited from engaging in speech or communicating with the School District. There is no allegation that such conduct would deter a person of ordinary firmness from exercising his First Amendment rights. There is also no allegation that the reporting of Plaintiff's statements to the police authorities would deter a person from exercising his constitutional rights, as Plaintiff himself made similar comments to the Chief of Police ("I am not taking this standing down" and "I am going for the jugular"). Clearly, Plaintiff was not deterred in any way by the Defendant's actions from expressing speech that would be considered threatening in nature. Therefore, Plaintiff fails to meet the second prong for a retaliation claim.

Id. at 14 (citations omitted). Finally, the District contends that Mr. Smith has failed to

sufficiently allege "that an adverse action was prompted or caused by the exercise of [his] First Amendment Rights," in that "[a]s noted above, the banning of Plaintiff from school property cannot be considered adverse action as Plaintiff had no constitutional right to access school property." Id. at 14-15.

With respect to whether Plaintiff has alleged facts in his Complaint that support that he engaged in constitutionally protected conduct, the Court finds, as stated *supra*, that Mr. Smith has sufficiently alleged facts in his Complaint that support that his speech, in which he harshly criticized District personnel for their response to D.S. being bullied and to a district employee's inappropriate behavior, is speech protected by the First Amendment. See ECF No. 1-5 at ¶¶ 14, 17, 21, 23, 29-30. Accordingly, Mr. Smith has sufficiently alleged facts to support that he engaged in constitutionally-protected activity as required to state a Section 1983 First Amendment retaliation claim against the District.

Turning to whether Mr. Smith has alleged sufficient facts in his Complaint to support that the District engaged in retaliatory action towards Mr. Smith sufficient to deter a person of ordinary firmness from exercising his constitutional rights, upon review of the actions allegedly undertaken by the District in response to Mr. Smith's speech, the Court finds that it is plausible that being banned from school property, and/or having criminal harassment and terroristic threat charges instituted against him as a result of the school officials' statements to the police,[3] would deter a person of ordinary firmness from exercising his constitutional right to criticize school officials. See H.C. v. Fleming County Kentucky Bd. of Educ., Civ. A. No. 5:16-235, 2017 WL 4249546, at *8 (E.D. Ky. Sept. 25, 2017) (while ultimately granting motion for summary judgment in favor of

---

[3]Certainly a reasonable inference from the factual allegations contained in Mr. Smith's Complaint is that the principal and superintendent presented the tone and/or substance of Mr. Smith's statements in such a manner that the police concluded that there was probable cause to arrest Mr. Smith for harassment and terroristic threats.

the defendant school board with respect to child and parent's retaliation claims on other grounds, court concluded that "[s]uspending a student, banning a parent from school property, and causing criminal trespass and truancy charges to be instituted are 'adverse actions' which would dissuade a reasonable person from engaging in conduct likely to solicit those consequences" and in so holding, noted "[a] school may prevent a parent from coming to school to avoid disruption. However, if it does so for a retaliatory purpose, it may be an adverse action."); Flege v. Williamstown Indep. Schools, Civ. A. No. 06-47, 2007 WL 679022, at *11 (E.D. Ky. Mar. 1, 2007) (denying defendants' motion for summary judgment on parents' retaliation for exercise of First Amendment rights claim where parents had been banned from their children's school because of their continued criticism of the school principal and the school's policies). Accordingly, Mr. Smith has sufficiently alleged facts to support that the District engaged in retaliatory action sufficient to deter a person of ordinary firmness from exercising his constitutional rights.[4]

---

[4] In so holding, the Court expressly disagrees with the District's contention that Plaintiff has no constitutional right to access to the school and therefore, any alleged conduct by the District relative to limiting Mr. Smith's access to school property is *de minimis*. As explained by the district court in Pierce v. Chene, 2017 WL 3600458 (D.N.M. Feb. 1, 2017), "even if [the plaintiff parents] had no constitutional right of access to school grounds, the ban in retaliation for their complaints violated their First Amendment rights to seek redress of their grievances regarding the way the individual defendants were handling their bullying claims." Pierce, 2017 WL 3600458, at *9. See also Bradley v. Pittsburgh Bd. of Educ., 910 F.2d 1172, 1177 (3d Cir. 1990) ("An action that would otherwise be permissible is unconstitutional if it is taken in retaliation for the exercise of the right of access to the courts).

The Court also disagrees with the District's contention that because Mr. Smith told the Springdale police chief "I am not taking this standing down" and "I am going for the jugular," see ECF No. 1-5 at ¶¶ 26, 31-32, 35, he cannot prove retaliatory action sufficient to deter a person of ordinary firmness from exercising his constitutional rights. As explained by the court in Germantown Cab Co. v. Philadelphia Parking Auth., Civ. A. No. 14-4686, 2015 WL 4770722 (E.D. Pa. Aug. 12, 2015):

the relevant inquiry is whether the Amended Complaint plausibly alleges that Defendants' actions were sufficient to deter a person of ordinary firmness from exercising his constitutional rights-not whether it plausibly alleges that the actions did or did not actually deter [the plaintiff]. *See* Thomas, 463 F.3d at 296 (citing Mitchell, 318 F.3d at 530); Citizens for a Better Lawnside, Inc. v. Bryant, Civ. A. No. 05-4286, 2007 WL 1557479, at *6 (D.N.J. May 24, 2007) ("[C]ourts use an objective standard, ... [and] [t]he accurate inquiry is whether [the defendant's conduct] would deter a person of ordinary firmness from exercising his or her First Amendment rights, not whether [the defendant's conduct] actually deterred Plaintiffs from speaking."); *see also* Smith v. Plati, 258 F.3d 1167, 1177 (10th Cir. 2001) ( "[I]t would be unjust to allow a defendant to escape liability for a First Amendment violation merely because an unusually determined plaintiff persists in his protected activity." (quotation omitted)).

Finally, as recently explained by the United States Court of Appeals for the Third Circuit in Roseberry v. City of Philadelphia, No. 16-1784, 2017 WL 5644366 (3d Cir. Nov. 24, 2017): "The third element, causation, means either: '(1) an unusually suggestive temporal proximity between the protected activity and the allegedly retaliatory action, or (2) a pattern of antagonism coupled with timing to establish a causal link.'" Roseberry, 2017 WL 5644366, at *1 (quoting Lauren W. ex rel. Jean W. v. DeFlaminis, 480 F.3d 259, 267 (3d Cir. 2007) (citing Krouse v. Am. Sterilizer Co., 126 F.3d 494, 503–04 (3d Cir. 1997))). In his Complaint, Mr. Smith has alleged that he was banned from school property by the District and arrested and charged with harassment and making terroristic threats based upon the statements made by District personnel to the Springdale Chief of Police less than one week after Mr. Smith engaged in his constitutionally protected activity. See ECF No. 1-5 ¶¶ 27-35. The Court finds that these factual allegations establish "an unusually suggestive temporal proximity between the protected activity and the allegedly retaliatory action," and therefore, Plaintiff has sufficiently alleged a causal link between his constitutionally protected conduct and the District's retaliatory action. Roseberry, 2017 WL 5644366, at *1.

For the above-stated reasons, the District's Rule 12(b)(6) Motion to Dismiss the Complaint filed against it by Mr. Smith shall be denied.

### C. Punitive Damages.

The District also moves to dismiss with prejudice Mr. Smith's request for punitive damages, arguing that because it is a local government entity, punitive damages cannot be awarded against it. ECF No. 3 at 15. Mr. Smith did not respond to this part of the District's Motion to Dismiss.

---

Germantown Cab Co., 2015 WL 4770722, at *5.

It is well established that municipal entities such as the District are immune from punitive damages in a Section 1983 suit. City of Newport v. Fact Concerts, Inc., 453 U.S. 247, 271 (1981). The reasoning behind this ruling is that awarding punitive damages against a municipal entity only punishes the taxpayer, rather than punishing "the tortfeasor whose wrongful action was intentional or malicious." Id. at 266-67. The District's Motion to Dismiss Plaintiff's request for punitive damages with prejudice, therefore, shall be granted.

## V.    CONCLUSION

For the foregoing reasons, the District's Motion to Dismiss, ECF No. 2, is granted in part as to Plaintiff's request for punitive damages and denied in all other respects. Accordingly, the following Order is entered:

### ORDER

AND NOW, this 8th day of December, 2017, upon consideration of Defendant Allegheny Valley School District's Motion to Dismiss and supporting brief, and Plaintiff David A. Smith's response thereto, IT IS HEREBY ORDERED that the Motion to Dismiss, ECF No. 2, is GRANTED IN PART as to Plaintiff's request for punitive damages and DENIED in all other respects.


BY THE COURT,


MAUREEN P. KELLY
CHIEF UNITED STATES MAGISTRATE JUDGE


21